LAGOA, J.
Courvoisier Courts, LLC (“Developer”), appeals a partial final summary judgment entered in favor of Courvoisier Courts Condominium Association, Ine. (“Association”).[1] For the reasons set forth below, we reverse.

I.FACTUAL AND PROCEDURAL HISTORY

On April 29, 2005, the Developer recorded a Declaration of Condominium (“Declaration”) for Courvoisier Courts (hereinafter “Condominium”). Following the recording of the Declaration, the Developer proceeded to assign certain limited common elements — parking and storage spaces — to purchasing unit owners in the ordinary course of selling units. On July 16, 2006, the Developer executed a “Transfer of Unassigned Units” (“Transfer”), which assigned the remaining parking spaces and storage spaces to one of its unsold units, Penthouse Unit Number 7. Two weeks later, on July 31, 2006, the Developer turned over control of the Association to the purchasing unit owners (“Turnover”), as contemplated by section 718.301, Florida Statutes (2004).
In July 2007, the Association filed suit against the Developer for construction defects in the condominium property. It subsequently amended its pleadings in February 2009 to assert that the Developer improperly transferred to itself those remaining parking and storage spaces just prior to Turnover, which prevented those limited common elements from becoming the property of the Association. The Association sought a declaratory judgment from the trial court as to whether the Transfer was valid, and both parties ultimately filed cross-motions for partial summary judgment on the issue.
On August 10, 2011, the trial court granted partial summary judgment in favor of the Association and against the Developer. The trial court denied the Developer’s motion for rehearing, and on February 13, 2012, the trial court entered partial final summary judgment in favor of the Association and ordered the Developer to immediately turn over to the Association any limited common elements still in its possession.[2] This appeal followed.
II. STANDARD OF REVIEW
The standard of review for a summary judgment is de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). A trial court’s interpretation of a condominium’s declaration is also reviewed de novo. First Equitable Realty III, Ltd. v. Grandview Palace Condo. Ass’n, 46 So.3d 1088, 1090 (Fla. 3d DCA 2010).
III. ANALYSIS
We start our analysis with that portion of the Declaration that addresses the common elements at issue, specifically, Section 3.3 of the Declaration, entitled “Limited Common Elements,” and Section 3.3(a)(i), entitled “Automobile Parking Spaces and Storage Spaces.” Section 3.3(a)(i) designates certain parking areas and storage spaces shown in the condominium survey as limited common elements, and provides:
One or more parking spaces and/or storage spaces may be assigned to a Condominium Unit as a Limited Common Ele *581 ment. Such parking spaces and storage spaces shall initially be assigned by the Developer, and the Developer may receive compensation from a purchaser in connection with the assignment of a parking space and/or storage space to a Unit. Any parking spaces and storage spaces that have not been assigned by the time Developer has sold all Units owned by it will become common elements and become the property of the Association. The Association may promulgate rules and regulations regarding the transfer of parking spaces and storage spaces among Unit Owners.
Significantly, Section 3.3(a)(i) states that “parking spaces and storage spaces shall initially be assigned by the Developer, and ... [a]ny parking spaces and storage spaces that have not been assigned by the time Developer has sold all Units owned by it mil become common elements and become the property of the Association.” (emphasis added).
The Association, however, argues that under Section 3.4(i) of the Declaration,[3] the Developer’s rights to the remaining parking and storage spaces terminated upon Turnover, and the spaces then became the property of the Association. Specifically, the Association contends that the rights granted to the Developer under Section 3.3(a)® of the Declaration are limited by a portion of Section 3.4® of the Declaration, which states that “[njotwith-standing the foregoing, Developer’s rights to the common elements shall terminate upon transfer of association control, or when Developer ceases to offer units for sale, whichever occurs first.” In sum, the Association contends that the Developer is allowed to assign the limited common elements until either it stops offering units for sale or it turns over control to the Association, whichever occurs first.
Such an interpretation, however, is untenable. Although the Association correctly argues that the legal effect of a contract must be determined from the words of the entire contract, “[a] court may not violate the clear meaning of a contract in order to create an ambiguity.” Hoffman v. Robinson, 213 So.2d 267, 268 (Fla. 3d DCA 1968). Section 3.3(a)® is clear and unambiguous and should not be given any construction other than that which is evident from a reading thereof.
To read the last sentence of Section 3.4® as a limitation on the rights granted to the Developer in Section 3.3(a)®, would be to “violate the clear meaning of [the] contract in order to create an ambiguity.” Section 3.4 concerns easements, not the *582 limited common elements at issue here, which are specifically addressed by Section 8.3(a)(i). Section 3.4 creates easements within the condominium for various purposes, including the easement created by subsection (i) for “Developer Activities,” which grants the Developer the right to use various portions of the Common Elements in connection with the construction and development of the Condominium. Given that the language relied upon by the Association is located at the end of Section 3.4(i) and is prefaced by the words “[n]ot-withstanding the foregoing,” this Court finds that the language more appropriately reads as a limitation on the easement rights granted to the Developer in the text immediately preceding it, namely that of Section 3.4(i), and does not apply to the limited common elements specifically addressed by Section 3.3(a)(i). This interpretation gives meaning and effect to the statement without creating a conflict with Section 3.3(a)(i). Such a reading complies with the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions of a contract. See City of Homestead v. Johnson, 760 So.2d 80, 84 (Fla.2000).
Based on the foregoing, we hold that the limited common elements at issue did not become the property of the Association upon Turnover.[4] The Developer retained the right to assign the exclusive use of the limited common elements until such time as it had “sold all Units owned by it.”
We, therefore, reverse the partial final summary judgment in favor of the Association and remand for the trial court to enter partial final summary judgment in favor of the Developer.
Reversed and remanded for proceedings consistent with this opinion.

. We have jurisdiction. See Fla. R.App. P. 9.130(a)(3)(C)(ii) (orders that determine "the right to immediate possession of property” are appealable non-final orders).

. It is undisputed that the Developer still owns unsold units in the Condominium.

. Section 3.4(i) of the Declaration, entitled "Easements,” states in pertinent part:
The following easements are hereby created (in addition to any easements created under the Act and any other provisions of this Declaration):
[[Image here]]
(i) Developer Activities: Until such time as the Developer completes and sells all of the Units in the Condominium, the Developer reserves the right to utilize various portions of the Common Elements or the uncompleted Units in connection with such construction and development of the Condominium. No Unit Owner or such Owner's guests or invitees shall in any way interfere or hamper the Developer, its employees, successors or assigns, in connection with such construction. Thereafter, during such time as the Developer, its successors or assigns, own any Units within the Buildings and is carrying on any business in connection therewith, including the selling, renting or leasing of such Units, the Unit Owners, their guests and invitees shall in no way interfere with such activities or prevent access to such Units by the Developer, its employees, its successors or assigns. Notwithstanding the foregoing, Developer's rights to the common elements shall terminate upon transfer of association control, or when Developer ceases to offer units for sale, whichever occurs first.

. Because we hold that the limited common elements did not become the property of the Association upon Turnover, but rather, remained the property of the Developer until such time as it had sold the last of its units pursuant to Section 3.3(a)(i), we need not reach the issue raised by the Association concerning the validity of the Developer’s transfer of the limited common elements prior to Turnover. Given our conclusion that the limited common elements remained the property of the Developer following Turnover, any issue as to whether the Developer’s transfer of the limited common elements to one of its unsold units prior to Turnover was proper is moot.